IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of EL PASO AUTOMATED OFFICE & INDUSTRIAL SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLARK MCCARTHY HOSPITAL PARTNERS II, JOINT VENTURE, <br><br> Defendant. | § § § § § § § § § § § § § | Cause No. 3:20-cv-00294 |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff United States of America for the use and benefit of EL PASO AUTOMATED OFFICE & INDUSTRIAL SYSTEMS, INC., and files this Original Complaint against CLARK MCCARTHY HOSPITAL PARTNERS II, JOINT VENTURE, and would show the Court as follows:

### I.  PARTIES

1.  Plaintiff United States of America for the use and benefit of EL PASO AUTOMATED OFFICE & INDUSTRIAL SYSTEMS, INC. ("EPAOIS") is a Texas corporation with its principal place of business located at 11045 Argal Court, El Paso, Texas 79935.

2.  Defendant CLARK MCCARTHY HOSPITAL PARTNERS II, JOINT VENTURE ("CMHP") is a joint venture between McCarthy Building Companies, Inc., a Missouri Corporation and registered Foreign Corporation doing business in Texas, having its principal place of business in Missouri at 1341 N. Rock Hill Road, St. Louis, Missouri 63124, and Clark Construction Group, LLC, a Maryland limited liability company and registered Foreign Limited Liability Company

doing business in Texas, with its principal place of business at 7500 Old Georgetown Road, Bethesda, Maryland 20814.  CMHP is authorized to do work in the State of Texas, and CMHP's principal office in Texas is located at 200 Constitution Ave., El Paso, Texas  79936.  CMHP may be served through service of process on the Texas Registered agent of McCarthy Building Companies, Inc., Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas  78701-3136 or wherever else the registered agent may be found.  CMHP may be served through service of process on the Texas registered agent for Clark Construction Group, LLC, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas  75201-3136 or wherever else the registered agent may be found.

## II.  JURISDICTION AND VENUE

3. This Court has exclusive jurisdiction over this action pursuant to the Miller Act, 40 U.S.C. §3133 et seq., which provides federal question jurisdiction pursuant to 28 U.S.C. §1367. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. §1367 because EPAOIS's state law claims are so related to its Miller Act claims that they form a part of the same case or controversy under Article III of the United States Constitution.

4. Venue is mandatory in the El Paso Division of the Western District of Texas under 40 U.S.C. §3133(b)(3) because the contract at issue was performed and executed in El Paso, Texas.

5. Venue is also mandatory in the El Paso Division of the Western District of Texas under the terms of the contract that governs this dispute.  CMHP and EPAOIS entered into a subcontract related to the construction of the Fort Bliss Replacement Hospital in El Paso, Texas. Article 11.1 of the subcontract between CMHP and EPAOIS states that venue for any legal action shall be the place of the project, which is El Paso, Texas.

### III.  FACTUAL BACKGROUND

6.     The claims in this matter stem from the Fort Bliss Replacement Hospital construction project (the "Project").  The United States Army Corps of Engineers ("USACE") was the awarding contracting office for the Project. CMHP served as the prime contractor on the Project.

7.     The Project involved the construction of a 1.13 million square-foot medical campus consisting of a seven-story replacement hospital and five supporting buildings.  The Project was designed to replace the existing William Beaumont Army Medical Center.  Construction started in 2013 and was supposed to have been completed in November 2016.  The hospital was originally supposed to have opened in April 2017.

8.     EPAOIS is a Texas corporation founded in 1989.  EPAOIS has been involved in numerous construction projects in the El Paso area for many years, and is a woman-owned, minority-owned El Paso small business.  EPAOIS has employed at most nine employees throughout its business life.  EPAOIS submitted its bid on the Project to provide the labor, materials, tools, and equipment for the metal louvers, sand trap louvers, and wall and corner guards for the Project.

9.     CMHP's representatives interviewed EPAOIS, and represented that the entire project would be finished by December 2016.  Before this Project, EPAOIS had never agreed to participate in a project over two years in duration.  David Vega, President of EPAOIS, had visited the work site, and thought things already looked off-schedule.  However, the CMHP representatives assured him everything was on schedule.  The CMHP representatives also told EPAOIS that it needed EPAOIS for the Project in order to meet minority goals for the government contract – CMHP needed woman-owned and minority-owned businesses for the project, and EPAOIS checked many of the needed boxes for CMHP.

3

10. EPAOIS entered into a subcontract with CMHP on August 15, 2013. A true and correct copy of the Subcontract, as provided by CMHP, is attached hereto and incorporated by reference as Exhibit 1. EPAOIS began working on the Project in 2013 and continued its work for over six (6) years. EPAOIS's involvement with the Project ended abruptly in November 2019, and is the subject of this lawsuit.

11. The Project itself was fraught with numerous problems, delays, and cost-overruns which have been well-documented and reported in local and national news. Early in the Project, the foundation pier-drilling subcontractor went bankrupt. A year later, an accident killed a worker, which necessitated work stoppage during an investigation. Then there were design issues and major issues with the steel subcontractor. CMHP abandoned its original schedule and planned sequence of activities, causing delays, extra time for contractors on the Project, and significant increases in contractors' costs to complete their scope of work. The Project ended up costing over $1.4 billion, which was close to a reported $629 million over budget.

12. EPAOIS's involvement in the overall Project and overall cost of the Project was slight, to say the least. EPAOIS's initial subcontract price was $3,935,000. Additional approved change orders amounted to $979,664.36, so the subcontract total amount was **$4,948,596.04**. EPAOIS had been paid $4,434,171.80 for the work and materials it had provided to the Project pursuant to its subcontract with CMHP. The unpaid balance of the subcontract as of October 2019 was **$514,424.24**. EPAOIS submitted what ended up being its last pay application for work covering period 08/31/19 – 09/27/19 in the amount of $210,982.70; that pay application should have been paid by CMHP, but never was.

13. In late September 2019, CMHP determined EPAOIS's labor force needed to be supplemented in order to meet CMHP's construction deadlines – which again, had become

somewhat of a moving target over the course of the six years EPAOIS was on the project. CMHP pushed back EPAOIS's activities and the work to be performed by EPAOIS's subcontractors multiple times. EPAOIS would be told by CMHP representatives that areas were ready for work on a certain date, and then when such areas would not be ready, CMHP would push that work back further. With the Project extremely delayed, CMHP pressured the few remaining subcontractors, such as EPAOIS, on the Project to meet unrealistic schedules. EPAOIS tried to comply with CMHP's scheduling demands, but CMHP determined more labor was needed.

14.   By email, CMHP represented to EPAOIS that a supplemental crew consisting of 15 persons would be necessary for a period of three weeks at an approximate cost of $195,000, and CMHP would only forward its direct costs for CMHP self-perform labor without any additional mark-up at an approximate cost of $75,000. Therefore, with approximately $500,000 left on EPAOIS's contract, with mostly punch list items left to complete, CMHP estimated over $228,907.53 would be left to be paid to EPAOIS on its contract. That amount would cover the invoices of two of EPAOIS's subcontractors – Stewart General Contractors ($47,252.78) and Business Environments ($144,967.62), whose work was completed and accepted by CMHP and had been included in EPAOIS's last pay application which was never paid by CMHP. This supplementation plan left no profit for EPAOIS, but EPAOIS was willing to move forward with the supplemental labor plan in order to finish out the Project and to complete EPAOIS's over six-year tenure on the Project.

15.   While EPAOIS agreed to the supplementation, EPAOIS was understandably worried about the costs associated with the supplemental crew as well as the quality control for that supplemental crew's work. EPAOIS committed to completing the punch list items attributable to its scope of work and attributable to the labor of its own workforce as well as the work still left

to be completed in its scope. EPAOIS had provided and stated it would continue to provide its utmost effort in providing materials to prevent any stoppage to the supplemental crew. EPAOIS told CMHP, however, that it would not be responsible for the work performed by the supplementation crew, any trade damage caused by that crew, or the use of materials by that crew. Strangely, CMHP refused to allow EPAOIS to even coordinate with the supplemental crew regarding materials and work to be performed.

16. EPAOIS's remaining work on the Project was well over 90% complete, which can be seen by the percentage of completion for the numerous items listed on the last pay application EPAOIS submitted. What was left consisted of punch list work, and finishing installation of materials for the Hospital building. EPAOIS either was not involved with the other buildings in the Project or EPAOIS had finished its work with CMHP's acceptance of that work. In other words, if there was EPAOIS work to be finished by any supplementation crew, it was minimal. However, by letter of November 20, 2020, CMHP claimed EPAOIS had performance and scheduling issues. CMHP demanded EPAOIS complete all punch list items and all sheet wall protection on the project within 7 days, and complete the installation of all solid surface on the 3rd floor of the Hospital within 24 hours. CMHP also demanded EPAOIS immediately furnish a long list of materials, and pay Stewart and Business Environments out of pocket when those subcontractors should have been paid by CMHP through EPAOIS's last pay application.

17. CMHP's Senior Project Manager Ryan Major informed Mr. Vega EPAOIS would not be paid at all and that EPAOIS was expected to continue to work without payment and at CMHP's command. As a small contractor, EPAOIS could not continue to work for free, could not pay its subcontractors out of pocket, and could not pay continue to pay its crew. Mr. Major disingenuously told EPAOIS it should not return to the Project so that CMHP could just submit its

claims to the surety. In fact, Mr. Major told Mr. Vega CMHP had just done the same thing to another contractor on a claim for over $1 million and "everything had worked out fine."

18. On November 21, 2020, CMHP gave EPAOIS 24 hours to cure what CMHP claimed as its default and abandonment of the Project. In order to cure, EPAOIS would have had to expend an inordinate amount of money, which it unfortunately and simply did not have. CMHP made it impossible for EPAOIS to complete its work, and CMHP was well aware that it was forcing EPAOIS off the job.

19. By email, sent on Saturday, November 23, 2019, CMHP claimed EPAOIS abandoned the Project on November 21, 2019 and was therefore in default. EPAOIS vehemently disagrees that it abandoned the project. Instead, CMHP effectively squeezed EPAOIS off the project with unreasonable schedules and by making it financially impossible for EPAOIS to continue working. Delays in completing punch list items and work attributable to EPAOIS's scope of work on the Project were caused by design issues, conditions in the field, issues with materials, and CMHP's failure to allow EPAOIS to coordinate with other trades throughout the Project. There were enough funds left in EPAOIS's contract to cover the initial proposed supplementation crew as well as to cover the invoices for EPAOIS's subcontractors. By the claimed date of default, however, CMHP claimed all of remaining balance had been applied for supplemental workforce and CMHP's fees. CMHP did not provide EPAOIS documentation regarding how it has spent the balance of $500,000 left on its contract. EPAOIS maintains there simply was not over $500,000 of work left in EPAOIS's scope. CMHP expected EPAOIS to immediately finish its remaining work, purchase additional materials, and continue to work without pay for as long as CMHP deemed necessary. CMHP accepted EPAOIS's work on the Project and refused to pay EPAOIS or its subcontractors for that work. CMHP took all of the funds left on EPAOIS's contract and

claimed those were applied for the supplementation crew and CMHP's claimed management costs. CMHP then expected EPAOIS to work without pay at CMHP's demand. For a small company like EPAOIS, that simply was not feasible. Furthermore, CMHP's Project Manager disingenuously told EPAOIS to leave the job site.

20. Also, CMHP issued its final notice of default on Saturday, November 23, 2019, with a 24-hour notice to cure. According to Section 9.2 of the contract, CMHP "may at its option at any time after serving written notice of such default with direction to cure in a specific period, but not less than two (2) working days, and Subcontractor's failure to cure the default, terminate Subcontractor's employment by delivering written notice of termination to Subcontractor." Work days on the Project were Monday through Friday.

21. On Tuesday, November 26, 2019, CMHP sent what it termed Default Notice to EPAOIS and to EPAOIS's surety Washington International Insurance Company. The Default Notice apparently served as CMHP's notice of termination stating CMHP "declares your Subcontract in Default and will hold you and your surety fully responsible for all costs and impacts to the Project." Arguably, CMHP's notice of termination came less than two working days from the Saturday, November 23, 2019 final notice of default. Termination is a drastic decision, and therefore, CMHP should be required to follow the terms in the subcontract.

22. EPAOIS has submitted a request for equitable adjustment to its contract for credits/offsets for work EPAOIS performed, materials it purchased, and services which it rendered to CMHP and Project which had not been thoroughly considered by CMHP. EPAOIS's calculations indicate adjustments/offsets on this Project in the amount of **$434,827.77**. EPAOIS requested an equitable adjustment in this amount, but such request was refused by CMHP. EPAOIS, however, incurred these charges and did extra work in order to keep the Project on track.

EPAOIS's modifications, purchase of additional materials, and the provision of extra labor were accepted by CMHP and all benefitted CMHP and the Project as a whole.

23. By letter to CMHP counsel, EPAOIS has provided notice of its claims of wrongful termination to CMHP.

24. All conditions precedent to bringing this action have occurred.

### IV.  CAUSES OF ACTION

A.   Miller Act Claims

25. EPAOIS repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

26. EPAOIS supplied materials and labor in prosecution of the work provided for the prime contract.  EPAOIS has not been fully paid for such materials and work, even though such materials and work were intended for and inured to the benefit of CMHP under the prime contract. EPAOIS has provided written notice of its claims for wrongful termination as well as its request for equitable adjustment under EPAOIS's subcontract.  Furthermore, CMHP did not provide EPAOIS proper notice of default or a full opportunity to cure. EPAOIS is filing this suit not later than one year after the day on which the last of the labor was performed or material was supplied by EPAOIS.

27. EPAOIS has suffered damages of no less than $950,000.00, with amount left on EPAOIS's contract as well as the requested equitable offsets.  EPAOIS is entitled to recover at least $950,000 in damages, plus all interest, costs, and attorneys' fees as allowed by law.

B.   Breach of Contract

28. EPAOIS repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

29. A valid, enforceable contract exists between EPAOIS and CMHP. EPAOIS performed, tendered performance, or was excused from performing its contractual obligations. CMHP materially breached its contract by, among other things, failing to pay EPAOIS the outstanding amounts due and owing to EPAIOS for the materials and labor it provided pursuant to its subcontract with CMHP.

C.  Quantum Meruit

30. EPAOIS repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

31. In addition to, or in the alternative, if such be necessary and without waiving any of the foregoing, EPAOIS provided CMHP with the goods, materials, equipment, and services described herein. As a direct result of EPAOIS providing those goods, materials, equipment, and services, a benefit was conferred on CMHP. CMHP accepted the benefit of EPAOSI's goods, materials, equipment, and services, but has refused to fully pay for them. EPAOIS reasonably expected payment for the goods, materials, equipment, and services provided pursuant to its subcontract and additional changes orders throughout the course of the Project. CMHP will be unjustly enriched in the amount claimed by EPAOIS herein if allowed to retain the benefit conferred on CMHP without payment for the reasonable value of the goods, materials, equipment, and services provided by EPAOIS as described herein. The reasonable value of the goods, materials, equipment, and services provided by EPAOIS for which CMHP has made no payment is no less than $950,000.00 (including allowable markup) for which it is entitled to additional compensation. EPAOIS is entitled to recover its damages in connection with its quantum meruit claims, plus all interest, costs, and attorneys' fees as allowed by law.

## V. INTEREST

32. EPAOIS seeks pre- and post-judgment interest at the maximum rate permitted by law.

## VI. COSTS

33. EPAOIS seeks its reasonable legal costs, including attorneys' and consultants' fees, in connection with this action, and pursuant to EPAOIS's subcontract with CMHP.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, EPAOIS prays that CMHP be cited to appear and file an answer herein, and that CMHP have and recover judgment of and from CMHP for the following: (i) actual damages of no less than $950,000.00; (ii) pre- and post-judgment interest at the maximum legal rate; (iii) its reasonable costs, including consultant and attorneys' fees and all other reasonable expenses incurred in connection with this proceedings, including additional attorneys' fees if an appeal occurs; and (iv) such other and further relief, general or special, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

AINSA HUTSON HESTER & CREWS, LLP
5809 Acacia Circle
El Paso, TX  79912
(915) 845-5300
(915) 845-7800 FAX

By:   */s/ Chantel Crews*
      Chantel Crews
      State Bar No. 24007050
      ccrews@acaciapark.com
      Attorneys for Plaintiff